(No. 41104.—■■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* BARBARA WILLIAMS *et al.,* Appellants.

*Opinion filed May 27, 1970.*

WARD, J., took no part.

SAM ADAM and EDWARD M. GENSON, both of Chicago, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and ARTHUR BELKIND, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURT delivered the opinion of the court:

Defendants, Barbara Williams and Rose Ann Scott, were jointly indicted in the circuit court of Cook County on charges of unlawful possession of marijuana and in a

bench trial they were found guilty and given probation for three years, the first six months to be served in county jail.

The sole issue presented by the appeal is whether under the factual circumstances the court wrongfully denied production and identification of an informer, in violation of the defendants' rights under the fifth, sixth, and fourteenth amendments to the United States constitution and under sections 2 and 9 of article II of the Illinois constitution.

Defendants claim that the refusal of the State and the court to give the defendants sufficient information, so that they might call the affiant on the complaint for search warrant as a witness for the defense on the trial on the merits, denied defendants' sixth amendment right to compulsory process, and due process of law.

A complaint for search warrant was executed by Richard Jackson, an informer, stating that on August 23, 1965, he had occasion to be in an apartment at 3402 West Adams Street, Chicago and while there, "I saw in the possession of and under the direct control of a male negro known to me as Jim, a large quantity of crushed green plant (Marijuana). * * * I also saw this same negro known to me as Jim, give three capsules to a female negro, these were red and blue in color and she told me later they were called Christmas Trees, and that they will make you feel real good when you take them. Jim, the male negro still had a larger quantity of both the crushed green plant (Marijuana) and the capsules, called Christmas Trees when I left his apartment."

As the first witness for the State, Detective Richard McKelvey, of the Chicago Police Department's Narcotic Unit testified that on August 24, 1965, he was working with his partner, Raymond Kurowski, and on that date they went to a second floor apartment at 3402 W. Adams Street with the search warrant issued pursuant to said complaint at about 9:00 P.M. They knocked on the door, stating their office and that they had a search warrant. The occupants

refused to open the door and they had to knock it down. Defendants were shown and read the contents of the warrant.

He further testified that the ensuing search of the apartment revealed a brown manila bag containing marijuana and a Prince Albert can containing seventeen marijuana "reefers." These were found on the dining room table. In the dining room was another brown paper bag containing another quantity of marijuana. Every ash tray contained partially smoked "reefers". A social security card bearing the name Rose Ann Scott was found in a dresser drawer in a bedroom. There were ladies garments in all the dresser drawers including the one in which Scott's social security card was found. The prevailing item in each closet was women's clothing, and before leaving both appellants requested they change clothes. Miss Williams just changed shoes and took a coat and Scott changed everything. The clothing they changed into was from one of the closets containing women's clothing.

McKelvey testified further that both Scott and Williams stated at the time of arrest that they resided at the apartment located at 3402 W. Adams, second floor, but at the police station, Scott gave 3402 W. Adams as her address, and Williams gave a different address.

Officer Raymond Kurowski, who was Detective McKelvey's partner on August 24, 1965, was the next witness called by the State, and testified to substantially the same effect as McKelvey. In addition, he stated that upon entering the apartment there was a strong aroma of marijuana in the room. A search of Miss Williams's purse revealed a set of keys which she said belonged to her and which fitted the front door of the apartment. Miss Williams also told him that she lived in the apartment. Upon leaving, Miss Scott took a set of keys from her purse and locked the door of the apartment. She also stated that she lived at the apartment.

Rose Ann Scott, testifying in her own behalf, was the first witness called by the defense. She stated that on August 24, 1965, she was living at 3310 W. Roosevelt Road. On that date, she was taking a bus to her boyfriend's house, and met Barbara Williams, her friend, on the bus. She asked Barbara to join them and she said she would. Her boyfriend's name was James, and he lived at 3402 W. Adams. She stated that he left the keys to the apartment in the mail box, and she had clothes in the apartment because she stayed overnight on occasion. When Detective McKelvey asked her if she lived at the apartment she said that sometimes she did. Further, she testified that she did not know the marijuana was in the apartment and had not been there the previous day.

Barbara Williams also took the stand in her own behalf and stated that on August 24, 1965, she was living at 2802 W. Warren Boulevard. The rest of her testimony was substantially the same as that given by Rose Ann Scott.

Defense counsel conceded the fact that the search warrant was correct and proper, but made a pretrial motion for the production of the informant at the trial on the merits, which was denied.

The defendants contend that since "Richard Jackson" was in the apartment on August 23, 1965, and saw but one unnamed, unidentified and undescribed female, and since two females were arrested on the 24th, "Richard Jackson" would be an important defense witness on the guilt-or-innocent stage, and they contend that if he identified one of the defendants as being the female in the apartment the previous day, that well might have exonerated the other defendant, and if he reaffirms his affidavit, but said that neither of these defendants was the girl present there the previous day, it might well have exonerated both.

The leading case in the United States courts is *Roviaro* v. *United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623. There petitioner was indicted for violation of

the narcotics laws for having sold and for transporting drugs. Before and during the trial he sought to learn the identity of "John Doe", an informer, and his name and address, who was named as the purchaser. The government refused to disclose this information on the ground that John Doe was an informer, entitled to the privilege to remain unidentified at the trial where the issue was the fundamental question of innocence or guilt. According to the prosecution evidence the informer had been an active participant in the crime. He had taken a material part in bringing about the possession of the drugs by the accused, was present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged.

The court held that where, in an actual trial of a Federal criminal case, the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the government withholds the information, dismiss the action.

The court further stated, "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at 62, 1 L. Ed. 2d at 646.

This case was followed by *McCray* v. *Illinois,* 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056, in 1967. See also *People* v. *Durr,* 28 Ill.2d 308; *People* v. *Mack,* 12 Ill.2d 151; *People* v. *Connie,* 34 Ill.2d 353; *People* v. *Williams,* 38 Ill.2d 150.

In this case there were minor discrepancies in the testimony as to the clothing the defendants were wearing and into which they changed at the time of and following their arrest and their statements as to where they resided. There were no material discrepancies in the testimony of the officers of any significance. There is no controversy over the validity of the complaint and warrant and the testimony which the informer might have been able to offer does not in our opinion have such significance as would require his presence.

In *People* v. *Bak, ante,* p. 140, we held that it is not appropriate to attack the facts stated in a complaint upon which an otherwise valid warrant was predicated.

In the case of *Scher* v. *United States* (1938), 305 U.S. 251, 83 L. Ed. 151, 59 S. Ct. 154, it was held that the identity of an informer, whose information provoked police investigation and the arrest of the accused and the search of his car without a warrant could remain undisclosed when the police subsequently saw and heard for themselves sufficient evidence to justify conviction.

As this court said in *People* v. *Mack,* 12 Ill.2d 151, 167: "The circumstances of the present case that the informer conveyed his information to the police through the medium of a search warrant does not, as we view it, afford a reason to depart from the principle of the *Scher* case. We conclude that the informer's privilege was fairly and properly exercised in this case and that its exercise does not imply, as defendant suggests, that the informer's testimony would have been unfavorable to the prosecution." The court pointed out that the key to the *Roviaro* decision was the question of *participation* by the informer in the commission of the crime.

In the case at bar no such participation in the commission of the crime is to be found. We believe that the evidence upon which the court found the

defendants guilty amply supports the court's findings.

The Supreme Court in the *Roviaro* case stated, "A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." 353 U.S. at 60, 1 L. Ed. 2d at 645.

In that case the government's informer was the sole participant other than the accused in the transaction charged and the only person in a position to amplify or contradict the testimony of the government witnesses and the informer participated in the crime. The court there held that disclosure should have been ordered.

The facts in our case are sufficiently different to distinquish this case from *Roviaro*. Here there was no participation in the crime, the police evidence was clear and the circumstances surrounding the raid supported the conviction for knowingly possessing narcotics. We believe the requirements of fundamental fairness have been met in this case and we believe that the testimony of the informer would have been of little help to the defense in view of the independent evidence by which the crime of August 24, 1965, was proved.

We, therefore, are of the opinion that the action of the trial court in refusing to require disclosure of the identity of, and production of, the affiant on the complaint for search warrant was correct, and the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. Justice Ward took no part in the consideration or decision of this case.